UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JAMES J. MATT,

                          Plaintiff,

                     -and-

UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION, UNITED STATES OF AMERICA, and ABC PARENT/SUBSIDIARY GOVERNMENT ENTITIES 1-5,

                         Defendants.
------------------------------------------------------------------x

Civil Action No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

      JAMES J. MATT (hereinafter "Plaintiff"), by his attorneys, Pitta LLP, alleges the following upon information and belief against UNITED STATES DEPARTMENT OF JUSTICE (hereinafter "DOJ"), DRUG ENFORCEMENT ADMINISTRATION (hereinafter "DEA"), UNITED STATES OF AMERICA (hereinafter "USA"), and ABC PARENT/SUBSIDIARY GOVERNMENT ENTITIES 1-5 (collectively, "Defendants").

## NATURE OF ACTION

      1.     This is an action brought to address discrimination in employment on the basis of age in violation of the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"); the New York State Human Rights Law (New York Executive Law) (hereinafter "NYSHRL"); and the New York City Human Rights Law (New York City Administrative Code) (hereinafter "NYCHRL").

      2.     The action seeks compensatory and punitive damages to secure future protection and to redress the past deprivation of rights secured to Plaintiff under these federal, state, and local laws.

      3.     Plaintiff alleges, *inter alia*, that Defendants removed him from his position with Defendant DEA's Polygraph Unit, subjected him to continuous harassment and overly critical

and adverse employment evaluations, and retaliated against him for raising such disparities as a result of his status in a statutorily-protected class of employees, namely over the age of 40 and his temporal proximity to retirement age.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331, and 1343(a)(3)-(4), as well as 28 U.S.C. § 1367(a) for claims arising under the NYSHRL and the NYCHRL, based on supplemental jurisdiction over claims that arise from a common nucleus of operative facts and are so intertwined with other matters pending before the Court as to make exercise of supplemental jurisdiction appropriate.

5. The venue of this Court is invoked because Plaintiff's assigned work location and many of the operative facts and communications related thereto occurred with this District.

## PARTIES

6. Plaintiff is, at the time of this writing, 54 years of age, and is a resident of Manahawkin, New Jersey.

7. Plaintiff is and, during all time relevant to the instant matter, was employed by Defendant DEA as a Special Agent, primarily assigned to the New York Field Division (hereinafter "NYFD"), located in New York, New York.

8. Defendant DOJ is a federal executive department of Defendant USA and is tasked with the enforcement of federal law and administration of justice.

9. Defendant DEA is a law enforcement agency under the direction of Defendant DOJ and is tasked with combating drug trafficking and distribution.

10. Defendant USA is a sovereign country and is the overall parent entity for Defendant DOJ and Defendant DEA.

11. Upon information and belief, at all relevant times to the instant matter, Defendants, individually and/or collectively, constitute an employer as defined by the ADEA, NYSHRL, and NYCHRL.

12. ABC Parent/Subsidiary Government Entities 1 through 5 are fictitious names of governmental divisions and/or subdivisions that operated as additional employers of Plaintiff, and are otherwise involved in the violations complained of herein.

## ALLEGATIONS OF FACT

13. In July 1997, Plaintiff began his employment with Defendant DEA in the title of Special Agent Criminal Investigator (hereinafter "SA").

14. During all times relevant to the instant matter, Plaintiff has been assigned as an SA to NYFD, Group Delta 34.

15. During all times relevant to the instant matter, Plaintiff's first line supervisors were Group Supervisor Sean Wulff and then Group Supervisor Cesar Medina.

16. During all times relevant to the instant matter, Plaintiff's second line supervisors were Assistant Special Agent in Charge (hereinafter "ASAC") Carl Beckett and ASAC Timothy Flaherty.

17. In or about 2018, Plaintiff applied for and was assigned to Defendant DEA's Polygraph Unit (hereinafter "Unit") to begin training to becoming a certified Polygraph Examiner.

18. Plaintiff viewed this opportunity as a chance for upward advancement through Defendant DEA because it was viewed as a promotion from simply performing the routine, but necessary and honorable tasks of a "field agent."

19. In furtherance of this opportunity, in or about October 2018, Plaintiff traveled to Lorton, Virginia to meet with ASAC Mary Toomey and Unit Chief (hereinafter "UC") Daniel Holcomb before beginning the actual training portion for entrance into the Unit.

20. At the outset of this meeting, ASAC Toomey began her interview of Plaintiff by asking him about his age, which at that time was 51 years old.

21. After hearing Plaintiff's response, ASAC Toomey commented that Plaintiff was close to the mandatory age of retirement from Defendant DEA, which is 57 years of age.

22. Then, ASAC Toomey asked Plaintiff whether he was looking to retire anytime soon; to wit Plaintiff responded in the negative.

23. ASAC Toomey then indicated that she was looking for candidates entering the Unit to have some longevity therein and was not looking for any individual looking to occupy a necessary vacancy for the sole purpose of walking out the door, sooner rather than later.

24. In fact, Plaintiff represented to ASAC Toomey that he was looking to stay past the mandatory age of retirement, and was interested in putting in for an extension with Defendant DEA to stay until the age of 60 years old.

25. Plaintiff further represented, in response to ASAC Toomey's line of questioning about his age and future retirement plans, that he would be willing to sign a contract with Defendant DEA to simply not just complete the Polygraph training and retire to take a more lucrative, private contracting job.

26. Upon leaving said meeting, he encountered UC Holcomb and asked him whether UC Holcomb thought it was odd that ASAC Toomey would open the interview with pointed questions about Plaintiff's age and future retirement plans.

27. UC Holcomb provided Plaintiff with a non-descript response indicating to Plaintiff that he was just returning to the Unit and could not comment on ASAC Toomey's line of questioning during said interview.

28. Furthermore, during Plaintiff's time with the Unit, his first line supervisor was UC Holcomb and his second line supervisor was ASAC Toomey; and it must be noted that UC Holcomb is six years younger than Plaintiff and ASAC Toomey is one year younger than Plaintiff.

29. After Plaintiff's interview with ASAC Toomey, Plaintiff was subjected to a number of untoward events and violative acts that ultimately culminated in Plaintiff being removed from the Unit.

30. First, Plaintiff was forced to wait to actually commence the actual training portion of his assignment to the Unit.

31. The rationale explained to Plaintiff by Defendant DEA for the extended waiting period to begin Polygraph training was due to the fact that Defendant DEA could only have two trainees in that program at any given time.

32. However, Plaintiff later learned that such "two trainee" rule was artificial and completely without basis in fact.

33. Second, while Plaintiff was waiting to begin the training portion with the Unit, he learned that two other SAs had been selected to begin such training before Plaintiff.

34. Upon information and belief, Plaintiff later learned that these two other SAs were younger than Plaintiff.

35. Third, when Plaintiff actually began the training portion with the Unit, he was routinely denied written study guides by Defendant DEA and the supervisors in the Unit.

36. Despite Plaintiff's repeated attempts to secure such study guides to aid him in his training in the Unit, he was consistently rebuffed.

37. Fourth, Plaintiff's training portion with the Unit was cut short by two weeks, thereby denying him the full panoply of training and exercises designed to improve his skills as a Polygraph Examiner.

38. More specifically, according to Plaintiff, those last two weeks of training are agency-specific instructions related to Defendant DEA, since every federal agency that utilizes Polygraph Examiners maintains their own, respective protocols on conducting polygraph examinations.

39. And, despite these hardships suffered by Plaintiff, all of which are causally connected to Plaintiff's age, he was able to complete his training in the Unit.

40. Subsequently, Plaintiff was then placed into a mentorship program, in accordance with the Unit's protocols and manual.

41. However, there was an inexplicable four-month lapse between the ending of his training and the starting of his mentorship, during which time, he could not conduct any practice polygraphs; as such Plaintiff was unable to continue his professional growth and acuity with respect to taking polygraph examinations.

42. Upon starting this mentorship program, Defendant DEA routinely and habitually deviated from its mentorship manual, always to the detriment of Plaintiff.

43. Overall, Plaintiff's tenure in the mentorship program was abbreviated due to poor managerial decisions made by Defendant DEA.

44. Additionally, even though the mentorship manual requires Defendant DEA to make every available effort to ensure mentees successfully complete and satisfy the mentorship

program, Plaintiff was never offered remedial training opportunities to address any inadequacies he may have exhibited during his time in this program.

45. Further, Plaintiff's supervisors in the Unit never reviewed Plaintiff's practice polygraph examinations with him and never had any status calls with him to address any potential issues with Plaintiff's skills as a Polygraph Examiner, even though the mentorship manual required both.

46. Also, during his time in this program, Plaintiff was consistently and continuously subjected to overly-harsh and non-constructive criticism by one of his superiors, William Petrarca, who also happened to be three years Plaintiff's junior.

47. Nevertheless, despite these concerted efforts by Defendant DEA to keep Plaintiff from being certified as a Polygraph Examiner, Plaintiff applied for and was placed on the best qualified (hereinafter "BQ") list for a Polygraph Examiner vacancy in Defendant DEA's Miami field office.

48. In fact, he was able to secure such a slot on the BQ list, in part, because of glowing recommendations from ASAC Raymond Donovan and Regional Director Nicholas Palmeri, even though ASAC Toomey criticized Plaintiff for even applying for this post in the first place.

49. But, on or about September 14, 2020, Plaintiff was removed from the Unit by UC Holcomb without any advanced notice and certainly without any lawful justification for the same.

50. Days later, Plaintiff was apprised by Defendant DEA's Miami field office that he had been selected to fill the Polygraph Examiner vacancy and asked for a brief summary of his work experience with Defendant DEA for a press release and posting related to his promotion.

51. Dutifully, Plaintiff had to apprise Defendant DEA's Miami field office that he had been removed from the Unit, and as such was no longer eligible for that position.

52. And to add insult to injury, the Polygraph Examiner position Plaintiff should have received, but for the violative acts complained of herein, went to an SA who was significantly younger than Plaintiff.

53. Finally, for reasons unbeknownst to Plaintiff, he was warned by ASAC Toomey not to discuss his removal from the Unit with any other employee of Defendant DEA.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER THE ADEA
## AGAINST DEFENDANTS

54. Plaintiff repeats and realleges Paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55. According to § 621(b) of the ADEA, it is the purpose of this law "to promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment."

56. According to § 623(a) of the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age."

57. In order to satisfy his/her *prima facie* burden of age-based discrimination, a plaintiff must show: "(1) that he is a member of the class protected by the act, (2) that he was qualified for the position at issue, (3) that he suffered some adverse employment action, and (4) that the circumstances surrounding the action give rise to an inference of age discrimination." *Boise v. Boufford*, 121 Fed.Appx. 890, 891 (2d Cir. 2005).

58. Further, an adverse employment action is "a materially adverse change in the terms and conditions of employment," and include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other indices unique to a particular situation." *Sanders v. N.Y. City Human Resources. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).

59. Here, Plaintiff has met all four prongs of the standard set forth above and therefore has satisfied his *prima facie* burden of establishing age-based discrimination.

60. First, Plaintiff was 51 years old when ASAC Toomey inquired about Plaintiff's age and his future retirement plans.

61. Second, Plaintiff was and still is eligible and capable of performing the tasks and responsibilities of a Polygraph Examiner in the Unit, as evinced by his completion of training and his prospective appointment to serve in that role in Defendant DEA's Miam field office and the recommendations from ASAC Donovan and Regional Director Palmeri attesting to Plaintiff's skills and capabilities.

62. Third, Plaintiff suffered an adverse employment action when he was unceremoniously removed from the Unit, which would have been a boon to his career with Defendant DEA.

63. Fourth, Plaintiff's removal from the Unit was causally connected to his age because, *inter alia*, ASAC Toomey expressed immediate skepticism regarding Plaintiff's intention to transfer into the Unit, based upon Plaintiff's age and his temporal proximity to the mandatory retirement age.

64. In addition, an inference of age-based discrimination arises here because Plaintiff was passed over for training on at least two occasions by individuals who were younger then

him, and the Polygraph Examiner position in Defendant DEA's Miami field office went to a younger SA.

65. Further, the individuals who directly played a part in Plaintiff's removal from the Unit were all younger than Plaintiff.

66. Also, as stated above in ¶¶ 42-54, Plaintiff was constantly placed in a more disadvantageous position than other, younger SAs seeking placement in, training for, and certification from the Unit; most notably the failure of Defendant DEA to comply with its own rules, regulations, and manuals with respect to individuals in the Unit.

67. Based upon the foregoing, and given the fact that Plaintiff has satisfied his "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his removal from the Unit, and said adverse employment action was caused by and/or resulted from Plaintiff's age.

68. Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## SECOND CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL
## AGAINST DEFENDANTS

69. Plaintiff repeats and realleges Paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70. Pursuant to NYSHRL § 290:

> The legislature hereby finds and declares that the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the

rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants. A division in the executive department is hereby created to encourage programs designed to insure that every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the state; to encourage and promote the development and execution by all persons within the state of such state programs; to eliminate and prevent discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions and to take other actions against discrimination as herein provided; and the division established hereunder is hereby given general jurisdiction and power for such purposes.

71. Pursuant to NYSHRL § 296:

For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

72. Causes of actions alleging violations of the NYSHRL are treated in a similar manner to causes of action alleging violations of the ADEA. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 (2d Cir. 2010).

73. Pursuant to NYSHRL § 296, a *prima facie* case is alleged if: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of an individual's membership in a protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

74. In the instant matter, it is without question that Defendants violated the § 296 of the NYSHRL.

75. Plaintiff, at the time of his removal from the Unit, was 52 years of age meaning that he was/is in a protected class of employees, as per the NYSHRL.

76. As set forth in the factual allegations contained ¶¶ 61-67 above, Plaintiff has satisfied his *prima facie* obligations to establish each and every element of age-based discrimination.

77. Based upon the foregoing, and given the fact that Plaintiff has satisfied his "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his removal from the Unit, and said adverse employment action was caused by and/or resulted from Plaintiff's age.

78. Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

### THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER THE NYCHRL
### AGAINST DEFENDANTS

79. Plaintiff repeats and realleges Paragraphs 1 through 78 of the Complaint as if fully set forth herein.

80. NYCRHL § 8-101, *et seq.* proscribes discrimination based on race, national origin, gender, disability, and/or age, *inter alia*, as it relates to employers and employees.

81. NYCHRL § 8-107(1)(a) states, in pertinent part, that: "It shall be an unlawful discriminatory practice: [f]or an employer or an employee or agent thereof, because of the actual

or perceived age . . . of any person, . . . to discharge from employment such person or to discriminate against such person."

82. In order to establish a *prima facie* claim under this cause of action, it must be alleged that: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of said individual's membership in a protected class. *See Levin v. Yeshiva Univ.*, 96 N.Y.2d 484 (2001).

83. Additionally, causes of actions alleging violations of the NYCHRL are "construed by courts more liberally than its state or federal counterparts." *Zakrzewska v. New School*, 14 N.Y.3d 469 (2010); *see also* NYCHRL § 8-130.

84. In the instant matter, it is without question that Defendants violated the § 8-107 of the NYCHRL.

85. Plaintiff, at the time of his removal from the Unit, was 52 years of age meaning that he was/is in a protected class of employees, as per the NYCHRL.

86. As set forth in the factual allegations contained ¶¶ 61-67 above, Plaintiff has satisfied his *prima facie* obligations to establish each and every element of national origin discrimination.

87. Based upon the foregoing, and given the fact that Plaintiff has satisfied his initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to a discriminatory employment practice, namely his removal from the Unit, and said removal was caused by and/or resulted from Plaintiff's age.

88. Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### HARASSMENT UNDER THE ADEA
### AGAINST DEFENDANTS

89. Plaintiff repeats and realleges Paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90. In order to establish a *prima facie* claim for harassment under the ADEA, "a plaintiff must allege facts demonstrating that the alleged harassment created an objectively and subjectively hostile work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20 (1993).

91. The term "hostile work environment" exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hudson v. Loretex Corp.*, 1997 WL 159282, *3 (N.D.N.Y. 1997); *see Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004).

92. The ultimate determination concerning whether a hostile work environment exists is "based upon the totality of circumstances, and generally cannot be based upon isolated incidents of harassment." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62-63 (2d Cir. 1992); *see Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (analogizing the analysis of hostile work environment claims under Title VII to similar claims under the ADEA).

93. In the instant matter, Plaintiff was subjected to an objectively and subjectively hostile work environment, based upon the actions undertaken by Defendant DEA and its supervisory agents.

94. From the outset of his selection to begin training as a Polygraph Examiner, Plaintiff was the target of scorn and ire directly resulting from his age.

95. ASAC Toomey's line of questioning during her interview of Plaintiff and her overt disdain for Plaintiff, based upon his age and temporal proximity to mandatory retirement age, laid the groundwork for Plaintiff's tumultuous time with the Unit.

96. Although he repeatedly asked for written study materials from his superiors, he was routinely denied the same.

97. He was further denied the requisite supervision and mentorship, as dictated by Defendant DEA's own policies, with respect to peer review and substantive, critical feedback; instead, he was subjected to harsh and often unfounded barbs from Mr. Petrarca and ASAC Toomey.

98. He was also denied the remedial training to which he was entitled.

99. And his tenure, both in the training and mentorship aspects of the Unit were inappropriately shortened; all of which led to his removal from the Unit.

100. Accordingly, Plaintiff has established that a hostile work environment existed with Defendants.

101. Therefore, the harassment to which Plaintiff was subjected was directly linked to Defendants' knowledge of Plaintiff's age.

102. Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to harassment resulting from his age.

103. Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## FIFTH CAUSE OF ACTION
## HARASSMENT UNDER THE NYSHRL
## **AGAINST DEFENDANTS**

104. Plaintiff repeats and realleges Paragraphs 1 through 103 of the Complaint as if fully set forth herein.

105. In order to establish a *prima facie* claim for harassment under the NYSHRL, a plaintiff must allege "that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his work environment." *Birkholz v. City of New York*, 2012 WL 580522, *12 (E.D.N.Y. 2012).

106. The term "hostile work environment" exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hudson v. Loretex Corp.*, 1997 WL 159282, *3 (N.D.N.Y. 1997).

107. The ultimate determination concerning whether a hostile work environment exists is "based upon the totality of circumstances, and generally cannot be based upon isolated incidents of harassment." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62-63 (2d Cir. 1992).

108. Moreover, it must be noted that causes of actions alleging harassment under the NYSHRL are treated in a similar manner to causes of action alleging harassment under the ADEA. *See, generally Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995).

109. In the instant matter, it is without question that, in contravention of the NYSHRL, Plaintiff was caused to perform his duties in the Unit in an objectively and subjectively hostile work environment.

110. As set forth in the factual allegations contained ¶¶ 94-102 above, Plaintiff has satisfied his *prima facie* obligations to establish each and every element of age-based discrimination.

111. Accordingly, Plaintiff has established that a hostile work environment existed with Defendants.

112. Based upon the foregoing, and given the fact that Plaintiff has satisfied his "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that he was subjected to harassment resulting from his age.

113. Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## SIXTH CAUSE OF ACTION
## HARASSMENT UNDER THE NYCHRL
## AGAINST DEFENDANTS

114. Plaintiff repeats and realleges Paragraphs 1 through 113 of the Complaint as if fully set forth herein.

115. NYCHRL § 8-107(1)(a) states, in pertinent part, that: "It shall be an unlawful discriminatory practice: for an employer . . ., because of the actual or perceived age . . . of any person, . . . [t]o discriminate against such a person in compensation or in terms, conditions, or privileges of employment."

116. Under the NYCHRL, "liability for a harassment/hostile work environment claim is proven where a plaintiff proves that he or she was treated less well than other employees because of the relevant characteristic." *Valcarcel v. First Quality Maintenance*, 41 Misc.3d 1222(A), *9 (Sup. Ct., Queens Co. 2013).

117. Additionally, causes of actions alleging violations of the NYCHRL are "construed by courts more liberally than its state or federal counterparts." *Zakrzewska v. New School*, 14 N.Y.3d 469 (2010); *see also* NYCHRL § 8-130.

118. Specifically, under the NYCHRL, "a plaintiff need not demonstrate that the treatment was severe of pervasive," only that "he has been treated less well than other employees because of his membership in a protected class." *Williams v. N.Y. City Housing Auth.*, 61 A.D.3d 62, 76 (1st Dept. 2009).

119. In the instant matter, it is without question that, in contravention of the NYCHRL, Plaintiff was caused to perform his duties in the Unit in an objectively and subjectively hostile work environment.

120. As set forth in the factual allegations contained ¶¶ 94-102 above, Plaintiff has satisfied his *prima facie* obligations to establish each and every element of age-based discrimination.

121. Accordingly, Plaintiff has established that a hostile work environment existed with Defendants.

122. Based upon the foregoing, and given the fact that Plaintiff has satisfied its initial burden, *see Stalker v. Stewart Tenants Corp.*, 2010 N.Y. Misc. LEXIS 6921, *7 (Sup. Ct. N.Y. Co. November 9, 2010), Plaintiff has sufficiently alleged that he was subjected to harassment resulting from his age.

123. Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## STATEMENT OF CLAIM FOR RELIEF

By the actions and omissions described above, Defendants have violated the ADEA, NYSHRL, and NYCHRL.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court will:

- Find that Defendants, individually and collectively, violated the ADEA, NYSHRL, and NYCHRL;

- Award compensatory damages to Plaintiff, including but not limited to back pay and other monetary benefits due and owed to him;

- Award compensatory damages to Plaintiff for the pain, suffering, emotional distress, loss of dignity, humiliation, and damages to reputation and livelihood endured by Plaintiff in the amount totaling $500,000.00;

- Award Plaintiff punitive damages in an amount to be determined at trial;

- Award Plaintiff all reasonable attorneys' fees and costs, including expert fees, of this action; and

- Grant Plaintiff such other and further relief as this Court deems appropriate and

Dated: New York, New York
       July 15, 2022

PITTA LLP

By: _____
STEPHEN MC QUADE, ESQ.
*Attorneys for Plaintiff*
120 Broadway, 28th Floor
New York, New York 11554
212-652-3885

smcquade@pittalaw.com