

## PITTA LLP
### Attorneys at Law

120 Broadway, 28th Floor
New York, New York 10271
Tel: (212) 652-3890
Facsimile: (212) 652-3891

**Stephen Mc Quade**
**Partner**
Direct Dial: (212) 652-3885
smcquade@pittalaw.com

March 11, 2024

**VIA ECF**

Honorable John G. Koeltl, U.S.D.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   **Matt v. U.S. Department of Justice, *et al.***
       **Docket No.: 22-CV-6057 (JGK)**

Dear Judge Koeltl:

My name is Stephen Mc Quade, Esq., and I am a Partner at the law firm of Pitta LLP, attorneys for James Matt ("Plaintiff") in the above-referenced matter in his claims against the U.S. Department of Justice, the U.S. Drug Enforcement Administration, and the United State of America (collectively, "Defendants").

In conformance with the Court's Order, dated March 8, 2024, (*see* Dkt. 45), please allow this correspondence to serve Plaintiff's position statement regarding the dispute referenced in Defendants' letter, dated March 7, 2024, (*see* Dkt. 43), concerning the Stipulation and Order of Settlement and Dismissal, dated March 14, 2023 ("Settlement Agreement"). (*See* Dkt. 36).

The undersigned is troubled by the need for the Court's intervention at this stage in the seemingly closed litigation, nearly a year after the Settlement Agreement in the instant matter was filed and approved by the Court. (*See* id.). The undersigned is even more troubled by the duplicitous and disingenuous conduct of Defendants to walk away from an arms' length transaction that resulted in a mutually agreeable resolution that was, up until a few days ago, an acceptable conclusion to the instant litigation.[1]

---

[1]      The undersigned would like to make it abundantly clear that the deceitful actions detailed herein should not be ascribed to counsel representing Defendants in the instant matter. Quite the contrary, counsel for Defendants has comported himself ethically, has been an effective advocate for his client's interests, and has engaged the undersigned in all aspects of this litigation with the proper amount of professionalism. However, the undersigned's umbrage is directed toward Defendants and their unwillingness to comply and acknowledge with basic legal maxims governing contract law and sound judicial efficiency.

As stated above, the Settlement Agreement was entered into by Plaintiff and Defendants ("Parties") and was filed with the Court on March 14, 2023. (*See* id.). It provided, in pertinent part, that:

- The Parties would file a Stipulation of Voluntary Dismissal pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 41, (*see* ¶ 1);
- There was no admission of liability, (*see* ¶ 2);
- The Court approve the Settlement Agreement, (*see* ¶ 3);
- Plaintiff be permitted to apply for an extension of his mandatory retirement date, although said extension was not guaranteed, (*see* ¶ 4);
- The Settlement Agreement could become "null and void" in the event that, either the Court does not approve of this arrangement or Defendants reject Plaintiff's application for said extension, (*see* ¶ 5); and
- Defendants would remit a nominal payment of $5,500 to account for Plaintiff's personal, legal expenses related to the litigation of the instant matter. (*See* ¶ 6).

On December 7, 2023, Defendants apprised Plaintiff that his requested 1-year extension of his mandatory retirement date was granted. Then, on December 14, 2023, after the undersigned met-and-conferred with counsel for Defendants, the Parties jointly apprised the Court that a situation had arisen that would call into question the validity of the granted request for an extension of Plaintiff's mandatory retirement date. (*See* Dkt. 37). This December 14, 2023 letter further stated that Defendants' possible rescission of said request "could be reversed." (Id.). As such, the Parties were seeking a 30-day extension to work through the logistics of this situation; however, nowhere in this letter does it state Defendants intended to nullify the validity of the Settlement Agreement. The Court granted the Parties' 30-day extension to simply file the FRCP Rule 41 Stipulation. (*See* Dkt. 38).

Thereafter, respective counsel for the Parties discussed this development with their respective principals, and on January 16, 2024, the Parties again sought another 30-day extension because they were awaiting Defendants' decision on whether Defendants would, in fact, rescind Plaintiff's previously-granted 1-year extension of his mandatory retirement date. (*See* Dkt. 39). However, again, nowhere in the January 16, 2024 letter does it state Defendants intended to nullify the validity of the Settlement Agreement. The Court again granted the Parties' 30-day extension to simply file the FRCP Rule 41 Stipulation. (*See* Dkt. 40).

On February 14, 2024, Defendants officially rescinded Plaintiff's previously-granted 1-year extension of his mandatory retirement date. Thereafter, respective counsel for the Parties met-and-conferred regarding the impact, if any, that this official rescission would have on Plaintiff's desire to abide by the Settlement Agreement. As such, the Parties, on February 15, 2024, requested a 3-week extension to permit the undersigned and Plaintiff to discuss the impact, if any; thereby setting the new deadline to simply file the FRCP Rule 41 Stipulation of Voluntary Dismissal for March 7, 2024. (*See* Dkt. 41). Once again, nowhere in the February 15, 2024 letter does it state Defendants intended to nullify the validity of the Settlement Agreement. That same day, the Court graciously granted this third request for additional time to file said stipulation. (*See* Dkt. 42).

On March 6, 2024 at 4:38 p.m., counsel for Defendants emailed the undersigned inquiring about whether Plaintiff would rescind his assent to the Settlement Agreement. On March 6, 2024 at 9:43 p.m., the undersigned responded to said email stating that "he is fine with submitting the [FRCP Rule 41] stipulation."[2] Then, on March 7, 2024, on the day the Parties were slated to file the FRCP Rule 41 Stipulation, counsel for Defendants informed the undersigned that Defendants determined that they were no longer going to abide by the terms of the Settlement Agreement based upon the situation that arose back December 2023, which constituted a 180-degree turn from every representation they had made during this entire process.

This blatant attempt to rescind their assent to the Settlement Agreement, quite literally at the 11th hour, strikes as duplicitous and disingenuous behavior that is more akin to a schoolyard bully, petulantly wanting to get his way and has no place in this Court. It also bespeaks of Defendants simply attempting to run out the shot clock on Plaintiff. Since Plaintiff's previously granted 1-year extension of his mandatory retirement date had been rescinded and said date is approaching (August 31, 2024), Defendants can simply avoid resolving the underlying issue that resulted in the rescission, force Plaintiff to retire, and avoid remitting a nominal sum of money to Plaintiff; all of which is a gluttonous example of having one's cake and eating it too. Furthermore, Defendants' attempt to walk away from the Settlement Agreement, even after the Court has already approved the same, contradicts a basic tenet of contract law; namely offer-and-acceptance. As of the evening of March 6, 2024, Defendants asked if Plaintiff was still onboard with the Settlement Agreement; and as of that same evening, Plaintiff accepted Defendants' offer. To repudiate the Settlement Agreement on March 7, 2024 is too little too late, irrespective of the numerous opportunities Defendants had to express their desire to walk away from this deal, and their previous representations to the contrary.

In the event that Defendants are not willing to simply abide by the terms of the bargain the Parties reached nearly one year ago, Plaintiff will seek to protect and enforce all of his rights under the law. Specifically, Plaintiff intends on filing a motion for sanctions under FRCP Rule 11, which allows sanctions to be imposed by the Court against any party who files "other paper[s]" that are "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," FRCP Rule 11(b)(1); and the nature of said sanctions can be "what suffices to deter the repetition of the conduct." FRCP Rule 11(c)(4). Here, Defendants' missives to the Court on December 14, 2023, January 16, 2024, and February 15, 2024 constitute "other papers" that, now, were seemingly submitted "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Additionally, Plaintiff will seek to amend the complaint to include Defendants' latest actions as further retaliatory behavior taken against an individual protected by the Age Discrimination in Employment Act of 1967.

With all that being stated, and in the furtherance of promoting judicial economy and efficiency, Plaintiff would be more than happy to simply file the FRCP Rule 41 Stipulation, as it was prepared to do on March 6, 2024 and conclude this litigation.

---

[2]     It is important to repeat that, at no time during the period from December 14, 2023 to March 6, 2024, Defendants intended on walking away from the Settlement Agreement. To the contrary, it was the consistent and continued representations from Defendants that they would abide by the terms of the Settlement Agreement, namely the remittance of the $5,500, in consideration for the filing of the FRCP Rule 41 Stipulation.

The undersigned thanks the Court for the time and attention to the issue presented herein.

Respectfully submitted,

Stephen Mc Quade

cc:     Mark Osmond, Esq., Counsel for Defendants (*via ECF*)